The **FIDELITY AND CASUALTY CO. OF NEW YORK, Plaintiff-Appellee,**

v.

**Nadine BALDWIN et al., Defendants-Appellants.**

**Nadine BALDWIN et al., Plaintiffs-Appellants,**

v.

The **FIDELITY AND CASUALTY CO. OF NEW YORK, Defendant-Appellee.**

No. 74–1917.

United States Court of Appeals, Sixth Circuit.

April 21, 1975.

John D. Miller, Miller & Taylor, Owensboro, Ky., Kenneth N. Ragland, Ragland & Hicks, Calhoun, Ky., Charles J. Kamuf, Owensboro, Ky., for defendants-appellants.

Marvin P. Nunley, Bartlett, McCarroll & Nunley, Owensboro, Ky., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and CECIL, Senior Circuit Judge.

PER CURIAM.

On this appeal we have two actions originating in the McLean County, Kentucky Circuit Court which were consolidated and on petition of The Fidelity and Casualty of New York, one of the parties, was removed to the United States District Court for the Western District of Kentucky at Owensboro.

Nadine, Patricia, Tony, John and Chester Baldwin, to whom we will refer as the Baldwins recovered a judgment in the State Court against one Harrell H. Hayes for damages arising out of an automobile accident. Hayes being judgment proof, the Baldwins filed a second amended complaint in the State Court joining Fidelity as a party defendant. It was claimed that Fidelity was liable for the Hayes judgment by reason of an automobile dealers' compulsory liability insurance policy issued to one Charles Spain (KRS 190.033). Spain operated an automobile salvage yard and was a dealer in low priced automobiles.

KRS 190.033, Kentucky's Compulsory Insurance Statute, was expressly incorporated into Fidelity's policy, and was reproduced in full on the back of a certificate of insurance filed with the Kentucky Department of Motor Transportation. It provides in relevant part:

"No motor vehicle dealer's license or wholesaler's license shall be issued or renewed unless the applicant or holder of said license shall have on file with the department an approved indemnifying bond or insurance policy issued by some surety company or insurance carrier authorized to transact business within * * * Kentucky * * *. All bonds or policies must be issued in the name of the holder or applicant for the dealer's license or wholesaler's license. The bond or policy shall provide public liability and property damage coverage *for the operation of any vehicle owned or being offered for sale by the said dealer* or wholesaler when being operated by the owner or seller, his agents, servants, employes, prospective customers or other persons, * * *." (Emphasis added)

The district judge granted summary judgment to Fidelity and the Baldwins appeal. In determining the motion for summary judgment the district judge had before him the depositions of the parties involved in the transactions. The sole issue before us is whether under the facts, hereinafter stated, Fidelity is liable on its policy. This involves a construction of the Kentucky statute. We affirm.

In July of 1970 Hayes began the sequence of events which triggered this litigation. He took a 1962 Cadillac, which was titled to his employer, to Spain's car lot for the purpose of having it checked out for repairs. During the interim while the car was at Spain's,

Spain loaned him a slightly older Cadillac of which he, Spain, was the owner. Several days later Hayes came back to the car lot to check on whether his car could be repaired at reasonable cost. He consulted with Spain and then left in the borrowed Cadillac. He had not gone far when one Doris Boyd drove up to the lot in his 1962 Buick.

Boyd was interested in buying the borrowed Cadillac. He had seen Spain several times to get an opportunity to road test drive this car. In the meantime Spain had tried to get in touch with Hayes to have him return the Cadillac. On this occasion when Boyd came to the lot Spain told him that Hayes had just left and that he, Boyd, should overtake him and get the Cadillac. There is a conflict in the testimony here between Boyd and Spain. Boyd says Spain told him to trade cars with Hayes. Spain says he told Boyd to get the Cadillac and let Hayes walk.

The facts are that Boyd overtook Hayes several blocks from Spain's car lot and they traded cars. Each one took his own things out of his respective car, put them in the traded car, and Boyd drove away in the Cadillac and Hayes in the Buick. While Boyd was driving the Cadillac and Hayes the Buick, Boyd and Spain had some negotiations with reference to trading the Buick for the Cadillac. Ultimately the deal fell through and Boyd wanted his Buick back.

Hayes continued to drive the Buick for a week or ten days until on or about August fourth when he had the accident with the Baldwins while driving to Owensboro.

█ It is claimed on behalf of the Baldwins that a compulsory insurance policy issued in accordance with the requirements of a statute should be construed to protect the members of the public who avail themselves of the facilities of the insured. (See Maryland Casualty Co. v. Baker, 304 Ky. 296, 200 S.W.2d 757.) Thus it is argued that both Boyd and Hayes having a relationship to Spain with reference to automobiles, there was coverage under the dealer's compulsory policy issued to Spain. Neither Maryland Casualty v. Baker, *supra,* nor other authorities cited by appellants support this theory. Where the language of the statute is clear, it is controlling. In the Maryland Casualty case, the Court said at 200 S.W.2d p. 761, that it

"must necessarily rely on the wording of the applicable statute in order to determine whether appellants are liable."

It is conceded that the Kentucky Court of Appeals has never construed KRS 190.033 or the policies issued thereunder. We interpret the policy according to its clearly expressed terms.

In Gateway Construction Co. v. Wallbaum, 356 S.W.2d 247, 249 (Ky.1962) the Court said,

"The best way in most cases to ascertain such intent [legislative] or to determine the meaning of a statute is to look to the language used, but no intention must be read into the statute not justified by the language. (Citation omitted) The primary rule is to ascertain the intention from the words employed in enacting the statute, and not to guess what the Legislature may have intended but did not express. (Citation omitted) Resort must be had first to the *words, which are decisive if they are clear.* (Citation omitted) The words of the statute are to be given their usual, ordinary, and every day meaning." (Emphasis added)

See also Hilliard v. United States, 310 F.2d 631 (C.A.6).

The same principle is expressed in Perry v. Commerce Loan Co., 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827, cited by appellants,

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning."

This language is qualified by that meaning leading to "absurd or futile results" or being "plainly at variance with the policy of the legislation as a whole."

 The explicit language of the Kentucky statute which is the basis of this action is that the

" * * * policy shall provide public liability and property damage coverage for the operation of any vehicle owned or being offered for sale by the said dealer. * * * "

It is clear from the language of this statute that in order for the appellants to recover Spain would either have had to be the owner of the Buick or have offered it for sale at the time of Hayes accident with the Baldwins.

Under the facts of this case it is clear that Spain was neither the owner of the Buick nor had he offered it for sale. Therefore by the literal terms of the insurance policy Fidelity did not insure the 1962 Buick. Nor are we able to find any ambiguity or overriding public policy which would require us to strain the statutory language to give it the interpretation urged by the Baldwins. Accordingly, the Buick was not insured and the Baldwins may not recover against Fidelity.

Affirmed.