STANDARDBRED OWNERS ASSOCIA-
TION, individually, and on behalf of
others similarly situated; Marla J.
Fischl, individually, and on behalf of
others similarly situated; Peter N. Ca-
sadei, individually, and on behalf of
others similarly situated; Bernard F.
Brennan, individually, and on behalf of
others similarly situated; Joseph Faral-
do, individually, and on behalf of oth-
ers similarly situated; John Santoro,
individually, and on behalf of others
similarly situated; Malcolm Leroux, in-
dividually, and on behalf of others sim-
ilarly situated; Jon Paton, individually,
and on behalf of others similarly situat-
ed; Michael Forte, individually, and on
behalf of others similarly situated;
Larry Summer, individually, and on be-
half of others similarly situated; John
Dietz, individually, and on behalf of
others similarly situated; William Rice,
individually, and on behalf of others
similarly situated; James Champion,
individually, and on behalf of others
similarly situated; Peter Pinello, indi-
vidually, and on behalf of others simi-
larly situated; Arthur Y. Webb, individ-
ually, and on behalf of others similarly
situated, Plaintiffs–Appellants,

v.

ROOSEVELT RACEWAY ASSOCIATES,
L.P., Roosevelt Raceway, Inc., E.H.
Mortgage Co., Charles L. Evans, Evans
& Hughes, a limited partnership, Wil-
liam B. Hopkins, Barry B. Goldstein,
David A. Stevenson, Defendants–Appel-
lees.

No. 390, Docket 92–7603.

United States Court of Appeals,
Second Circuit.

Argued Nov. 5, 1992.

Decided Feb. 8, 1993.

Bernard Persky, New York City (Kenneth F. McCallion, James W. Johnson, Goodkind Labaton Rudoff & Sucharow, Julian R. Birnbaum, Denny Chin, Vladeck, Waldman, Elias & Engelhard, of counsel), for plaintiffs-appellants.

Anton J. Borovina, Mineola, NY (D'Amato, Forchelli, Libert, Schwartz, Mineo & Carlino, of counsel), for defendants-appellees.

Before: TIMBERS, VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a summary judgment of the United States District Court for the Eastern District of New York (Platt, C.J.) dismissing an action seeking RICO and Civil Rights recoveries for alleged fraudulent representations and conduct in connection with the purchase and closure of Roosevelt Raceway, a harness-racing facility in the Town of Hempstead, New York. We reverse and remand as to the RICO cause of action, 18 U.S.C. § 1964(c), but affirm dismissal of the Civil Rights count, 42 U.S.C. § 1983.

To understand why we send the RICO count back for further proceedings, the reader should bear in mind that a racetrack is not simply a dirt oval and a grandstand. It is a community of individuals—horse owners, trainers, drivers, grooms, blacksmiths, veterinarians, racing officials and pari-mutuel clerks—who, together with the owners of the physical plant, provide entertainment for horse-racing enthusiasts. Needless to say, the two groups are interdependent and one cannot function without the other.

Plaintiffs-appellants are individual members of the first group and an organization to which many of them belong, Standardbred Owners Association ("SOA"). Defendants-appellees are Roosevelt Raceway Associates ("RRA"), a Delaware limited partnership which purchased the Raceway in 1984, RRA's general and limited partners, and Roosevelt Raceway, Inc., a corporation wholly owned by RRA, which operated the track for several years before it closed.

RRA purchased the Raceway with financing from bonds issued by the Town of Hempstead Industrial Development Agency ("IDA"). In its application for financing, RRA represented that it intended to continue racing operations at the plant. Similar representations were made to plaintiffs. Both before and after the purchase, RRA continued to make such assurances, by mail and otherwise. There is evidence that IDA provided financing in order that the track, a valuable Town asset, would continue to operate. However, IDA rejected SOA's suggestion that IDA require con-

tractual guaranties of such continued operation from RRA. In fact, the contract between IDA and RRA provided that RRA could close the track and sell the property at any time by repaying the IDA bonds. Nonetheless, RRA continued to give oral assurances that the track would continue in operation.

Plaintiffs contend that the defendants were guilty of a colossal fraud, that they never intended to continue the track in operation but planned instead to use the property for much more lucrative commercial purposes. In support of this contention, plaintiffs presented evidence that the defendants promptly permitted the racing plant to fall into disrepair, and that within a year after acquiring the Raceway, RRA began negotiations for the sale of all or parts of it. In 1988, RRA redeemed the bonds and discontinued racing at the track. However, their efforts to effect a sale continued and have failed of consummation only because of RPA's inability to secure zoning approval from the Town.

■ In granting defendants' motion to dismiss the RICO cause of action, the district court did not decide whether defendants' conduct fell within the broad proscription of RICO. It held instead that plaintiffs lack standing to maintain a RICO action. We therefore will confine our review to this narrower issue. In holding that plaintiffs lack standing, the district court relied in large part upon the Supreme Court's opinion in *Holmes v. Securities Investor Protection Corp.*, — U.S. at —, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), and this court's holding in *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir.1990). These opinions emphasize the necessity of proof in a RICO case that the defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct. *Holmes, supra,* — U.S. at —, 112 S.Ct. at 1318. "[F]actual causation (e.g., 'cause-in-fact' or 'but for' causation) is not sufficient." *Hecht, supra,* 897 F.2d at 23. The test of proximate cause, as we summarized it in *Hecht,* is whether the

defendant's acts "are a substantial factor in the sequence of responsible causation," and whether "the injury is reasonably foreseeable or anticipated as a natural consequence." *Id.* at 23–24. This rule is intended to preclude recovery by plaintiffs who "complain[ ] of harm flowing merely from the misfortunes visited upon a third person," *Holmes, supra,* — U.S. at —, 112 S.Ct. at 1318; *see, e.g., Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.) (corporate shareholders or creditors suing for injuries to the corporation), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

■ Plaintiffs in the instant case are not making a claim that is derivative of injury, if any, sustained by the IDA. They are suing for injuries that were a direct and inevitable result of defendants' conduct and must have been anticipated by the defendants. As stated above, plaintiffs were an integral and inseparable part of Roosevelt Raceway. An injury to the Raceway was inevitably an injury to them. *See Blue Shield of Virginia v. McCready,* 457 U.S. 465, 478–79, 102 S.Ct. 2540, 2547–48, 73 L.Ed.2d 149 (1982); *Litton Sys., Inc. v. American Tel. & Tel. Co.,* 700 F.2d 785, 821 (2d Cir.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). A finding of causal relation under these circumstances comports with the demands of justice without at the same time opening the floodgates to administratively inconvenient or unmanageable litigation. *See Holmes, supra,* — U.S. at — & — n. 10, 112 S.Ct. at 1318 & 1316 n. 10; *compare Sperber v. Boesky,* 849 F.2d 60, 64–65 (2d Cir.1988) *with Morley v. Cohen,* 888 F.2d 1006, 1011 (4th Cir.1989).

The district court misinterpreted plaintiffs' claimed damages when it described them as a "mere expectation of future wages, income and profits," and therefore not recoverable. Affidavits submitted by plaintiffs indicated that, in the fraudulently induced belief that racing would continue, plaintiffs purchased, relocated and reconstructed capital equipment for use at the track, and designed their purchases and training of horses with the intent to race

them at the track. Without attempting to delineate the full scope of recoverable damages, we hold that expenditures and expenses of this nature properly may be labeled as such. *See Ostano Commerzanstalt v. Telewide Sys., Inc.,* 880 F.2d 642, 648 (2d Cir.1989); *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 793–94 (2d Cir.1986); *cf. Fleischhauer v. Feltner,* 879 F.2d 1290, 1299–1301 (6th Cir. 1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990).

Plaintiffs' lack of a contractual right to expect that defendants would not close the track is not of controlling significance. The district court apparently believed that defendants' contractual right to refinance the IDA bonds and shut the track and plaintiffs' knowledge thereof somehow negated, as a matter of law, plaintiffs' standing to assert defendants' RICO violation. However, the existence of such contractual "rights" does not foreclose the plaintiffs' RICO fraud claims, nor does it immunize defendants from the consequences of a pattern of direct misrepresentations to plaintiffs. If, as plaintiffs contend, defendants continually misrepresented that they would not close the track and were not interested in developing the property, defendants fraudulently induced plaintiffs to take actions and make expenditures that would result in their financial injury. Plaintiffs' complaint seeking recovery for these injuries reads in tort, not in contract. *See Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958).

Construing the pertinent portions of the record in the light most favorable to the plaintiffs, as we are required to do, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962), we hold that the district court erred in concluding as it did that "plaintiffs lack standing to sue because the connection between the injury and the alleged RICO violation is 'too remote', . . . and therefore, defendants' motion for summary judgment must be granted."

The district court did not err, however, in dismissing plaintiffs' cause of action seeking damages under 42 U.S.C. § 1983. Although a private individual may act under color of state law when he is a willful participant in a joint action with the state, *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980), in order for private conduct to qualify as state action, the state must be more than a passive victim of an individual's wrongful conduct. There must be either a symbiotic relationship between the state and the defendant, such as, for example, a direct financial stake by the state in a business, or a close nexus between the state and the alleged wrongful conduct. *Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1081–83 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1991). Plaintiffs' assertion that RRA perpetrated a fraud on the unwitting IDA refutes, rather than supports, the existence of a concert of purpose that warrants description of RRA's conduct as state action.

For the reasons above stated, we affirm the district court's dismissal of the Civil Rights count, but reverse the dismissal of the RICO count and remand to the district court for further proceedings.